The People of the State of Illinois, Defendant in Error, v. John Rodeen, Plaintiff in Error.

Gen. No. 8,550.

Opinion filed April 27, 1932.

THOMPSON & MARTENSEN and F. R. BAIRD, for plaintiff in error.

C. M. SWANSON, State's Attorney, for defendant in error.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

A writ of error is prosecuted in this case by the plaintiff in error, John Rodeen, from a judgment of conviction in the county court of Ford county for violation of an act of the General Assembly to regulate the manufacture and sale of substitutes for butter. The conviction is based upon an amended information filed against the plaintiff in error which is as follows:

"Now comes into court State's attorney in name and by authority of People of State of Illinois, and prosecuting this suit on behalf of said People, gives Court to know that John Rodeen late of said county, on April 18, 1931 at and within said county did unlawfully sell imitation butter containing more than one per cent of water and fat and oil other than that derived from milk or cream, made in appearance and

semblance of butter and said imitation butter then and there having been produced by combining animal fat and vegetable oil, neither derived from milk or cream, with milk and cream with the effect of imparting thereto a shade of yellow so that such substitute and imitation butter resembled a shade of genuine butter contrary to the form of the statute in such case made and provided and against the peace and dignity of the same People.''

A motion was made by the plaintiff in error to quash the information which was overruled by the court. It is contended that the court erred in overruling the motion to quash because the information was insufficient in law; that it fails to allege a substantial element of the offense as defined by the statute. That part of paragraph 91 of the act under which the information was drawn provides as follows:

''No person shall combine any animal fat or vegetable oil or other substance with butter, or combine therewith or with animal fat or vegetable oil, or combination of the two, or with either one, any other substance or substances, for the purpose or with the effect of imparting thereto a yellow color or any shade of yellow so that such substitute shall resemble yellow or any shade of genuine yellow butter, nor introduce any such coloring matter or such substance or substances into any of the articles of which the same is composed.'' Cahill's St. ch. 56b, ¶ 91.

In *People v. Martin,* 314 Ill. 110, the Supreme Court, in passing upon the sufficiency of an indictment or information charging a statutory offense, said:

''An indictment or information charging an offense defined by statute should be as fully descriptive of the offense as is the language of the statute and should allege every substantial element of the offense as defined by the statute.''

We are of opinion that the information in question meets the legal requirements defined in the *Martin* case.

After the overruling of the motion to quash the amended information, plaintiff in error pleaded not guilty and the case proceeded to trial. The jury returned a verdict finding the defendant guilty in manner and form as charged in the information and he was thereupon sentenced to pay a fine of $100 and costs.

Various errors are assigned and argued, but the main contention for reversal of the judgment of conviction is that the evidence is insufficient to show the guilt of the plaintiff in error of the offense charged.

It appears from the evidence that Arthur Stevenson, a resident of Ford county, went to the plaintiff in error's store in Paxton and bought a package of imitation butter, a product known as "Oleomargarine." He bought it not for his own use but to deliver to the State's attorney; and did thereafter deliver it to the State's attorney, who had a part of this imitation butter product chemically analyzed by O. M. Shelley, the chemist for the Department of Agriculture of this State. This chemist made scientific tests to ascertain the combination of fats or oils that the imitation butter product referred to was composed of; and Shelley was called as a witness and testified at the trial that the product was "composed of some fat other than butter fat, or a mixture of fat"; that "the Reichert Meissl test determination indicates that there is some butter fat"; but he did not make any determination as to what the other fat was but that it was not derived from milk or cream; that he did not determine whether it was an animal fat or a vegetable fat; that he did not determine whether there was any vegetable fat in the product; and that he could not say whether there was any vegetable fat in it or not; and that he could

not say whether there was any animal fat in the product; that he did not know what kind of fat it was. Also that he did not find any artificial coloration in the product, like annatto.

The evidence shows that the imitation butter resembled genuine yellow butter. The testimony of the chemist, Shelley, referred to is the only evidence concerning the elements of fat or coloring matter contained in the product, and he positively stated that he did not know, and could not say, whether there is any animal or vegetable oil in the product, or coloring matter. There is no evidence that there was any milk or cream in the composition of the product. To sustain the charge in the information, it was legally necessary to show beyond reasonable doubt that the imitation butter product in question was composed of animal fat or vegetable oil and had been produced by a combining of animal fat and vegetable oil with milk and cream; and that the combination of fats referred to could or did have the effect of imparting the shade of yellow to the product, which is the gravamen of the offense. It is apparent therefore that the verdict of guilty is not supported by sufficient evidence. The judgment of conviction is therefore reversed and the cause remanded.

*Reversed and remanded.*